**Exhibit "A"**

# ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)—Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

**November 28, 2006**          **PROVIDENCE**          **Rhode Island**
[Date]                           [City]                   [State]
**20 BONAPARTE STREET**
**NORTH PROVIDENCE , RI 02904**

[Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ **191,200.00**          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
**FIRST NLC FINANCIAL SERVICES, LLC.**
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **8.4000%**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.  PAYMENTS**

(A)  **Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **January 01, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **December 01, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
**FIRST NLC FINANCIAL SERVICES, LLC.**
**700 W. HILLSBORO BLVD. B-1 #204, DEERFIELD BEACH, FL 33441**
or at a different place if required by the Note Holder.

(B)  **Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **1,387.15**. This amount may change.

(C)  **Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE—LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)—
Single Family

*(Page 1 of 4 pages)*          FNLC Form 33019L1 (04052005)



## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of **December 2009**                , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
**Four and One Half**
percentage points (        **4.5000%**) to the Current Index.  Subject to the limits stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than          **11.4000%** or less than          **8.4000%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and One Half**
percentage points (        **1.5000%**) from the rate of interest I have been paying for the preceding        **6**        months. My interest rate will never be greater than        **15.4000%** or less than        **8.4000%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

 JS  (*Page 2 of 4 pages*)

FNLC Form 33019L2 (04052005)

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Ten** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

FNLC Form 33019L3 (04052005)

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
JUNA SENDOLO                  -Borrower

_____ (Seal)
NYA SENDOLO                   -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

WITHOUT RECOURSE, PAY TO THE ORDER OF

BY _____        ___[Sign Original Only]
FIRST NLC FINANCIAL SERVICE, LLC
_____ ____ ____ ___
VICE PRESIDENT, CFO

FNLC Form 33019LC4 (04052005)

DOC. NO.: 00002767
BOOK NO. 2349 PAGE 188

After Recording Return To:
**FIRST NLC FINANCIAL SERVICES, LLC.**
**700 W. HILLSBORO BLVD. B-1 #204**
**DEERFIELD BEACH, FLORIDA 33441**



*City*

**Exhibit "B"**

———————— [Space Above This Line For Recording Data] ————————

# MORTGAGE

**MIN**

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated **November 28, 2006**             , together with all Riders to this document.

(B)  "Borrower" is JUNA SENDOLO and NYA SENDOLO,  WIFE AND HUSBAND AS JOINT TENANTS *By JS The Entirety NS*

Borrower is the mortgagor under this Security Instrument.

(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D)  "Lender" is **FIRST NLC FINANCIAL SERVICES, LLC.**
Lender is a **LIMITED LIABILITY COMPANY**                          organized and existing under the laws of **THE STATE OF FLORIDA**                          . Lender's address is
**700 W. Hillsboro Blvd. Bldg 1 Ste. 204, Deerfield Beach, FL 33441**

(E)  "Note" means the promissory note signed by Borrower and dated **November 28, 2006**             . The Note states that Borrower owes Lender **One Hundred Ninety One Thousand Two Hundred and no/100**
Dollars (U.S. **$191,200.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 01, 2036**             .

(F)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3040 1/01 (rev. 11/02)
GreatDocs™
ITEM 2761L1 (0209)—MERS          *(Page 1 of 12 pages)*          To Order Call: 1-800-968-5775

**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [X] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** "**Escrow Items**" means those items that are described in Section 3.

**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the
**County** of **PROVIDENCE** :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

**SEE ATTACHED LEGAL DESCRIPTION**

which currently has the address of             **20 BONAPARTE STREET**
[Street]

**NORTH PROVIDENCE**        , Rhode Island        **02904**        ("Property Address"):
[City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   **2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays

---

Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

---

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                    Form 3040 1/01 (rev. 11/02)

ITEM 2761L5 (0209)—MERS                    *(Page 5 of 12 pages)*                    GreatDocs™
To Order Call: 1-800-968-5775

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this

Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)   Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)   Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11.   Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period,

DOC NO: 00009767
BOOK 2349 PAGE 195

Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2761L9 (0209)—MERS 

*(Page 9 of 12 pages)*

Form 3040 1/01 (rev. 11/02)

GreatDocs™
To Order Call: 1-800-968-5775

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2761L10 (0209)—MERS

*(Page 10 of 12 pages)*

Form 3040 1/01 (rev. 11/02)
GreatDocs™
To Order Call: 1-800-968-5775

presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22.  Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23.  Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24.  No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

**25.  Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

DOC NO: 00009767
BOOK 2349 PAGE 199

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JUNA SENDOLO                    -Borrower

_____ (Seal)
NYA SENDOLO                     -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

Witness:                        Witness:

_____ _____

State of Rhode Island
County of **PROVIDENCE**

In **NORTH PROVIDENCE**          (City) in said County on the   **28th**   day of   **November 2006**   ,
before me personally appeared **JUNA SENDOLO, NYA SENDOLO**

, each and all to me known, and known by me to be the party(ies) executing the foregoing instrument, and he/she/they acknowledged said instrument, by him/her/them executed to be his/her/their free act and deed.

_____

My commission expires:

NOTARY PUBLIC
REBECCA N. WARR
MY COMMISSION EXPIRES 11/2/08

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT              Form 3040 1/01 (rev. 11/02)

File N 

DOC NO: 00009767
BOOK 2349 PAGE 200

### EXHIBIT A - LEGAL DESCRIPTION

That certain real estate located in the Town of North Providence, County of Providence, State of Rhode Island, and described as follows:

That certain tract or parcel of land, with all the buildings and improvements thereon, situated on the westerly side of Bonaparte Street, in said Town of North Providence, laid out and designated as lots numbered sixty-eight (68), sixty-nine (69), seventy (70) and seventy-one (71) on that plat of land which said plat is duly recorded in the office of the Town Clerk in said Town of North Providence on Plat Card 11.

Mortgage Guarantee & Title Company

DOC NO: 00009767
BOOK 2349 PAGE 201

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*)—Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this **28th** day of **November 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
**FIRST NLC FINANCIAL SERVICES, LLC.**

("Lender") of the same date and covering the property described in the Security Instrument and located at:
**20 BONAPARTE STREET
NORTH PROVIDENCE , RI 02904**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **8.4000**%. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A)   Change Dates**
   The interest rate I will pay may change on the first day of **December 2009** , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
   **(B)   The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
   **(C)   Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding
**Four and One Half**
percentage points ( **4.500**%) to the Current Index. Subject to the limits stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER—LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)—Single Family

*(Page 1 of 3 pages)*

FNLC Form 33029L1 (04052005)

DOC NO: 00009767

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.4000**% or less than **8.4000**%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and One Half** percentage points ( **1.5000**%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **15.4000**% or less than **8.4000**%.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me to and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

*(Page 2 of 3 pages)*



FNLC Form 33029L2 (04052005)

DOC NO: 00009787
BOOK 2349 PAGE 203

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.

_____ (Seal)
JUNA SENDOLO                    -Borrower

_____ (Seal)
NYA SENDOLO                     -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

*(Page 3 of 3 pages)*

FNLC Form 33029L3 (04052005)

DOC NO: 00009767
BOOK  2349 PAGE  204

_____[Space Above This Line For Recording Data]_____

MIN▮▮▮▮▮▮▮▮▮▮▮▮▮

# ARM/BALLOON RIDER

This BALLOON RIDER is made this **28th**    day of      **November 2006**      , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed including other Riders (collectively the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to **FIRST NLC FINANCIAL SERVICES, LLC.**
a  **LIMITED LIABILITY COMPANY**                                organized and existing under the laws of  **THE STATE OF FLORIDA**
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

### 20 BONAPARTE  STREET, NORTH PROVIDENCE , RI 02904

[Property Address]

ADDITIONAL COVENANTS.  In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument):

KNOW ALL MEN BY THESE PRESENTS, THAT:  (1) the first sentence of the second paragraph of Section 4(C) of the Adjustable Rate Rider is hereby amended by deleting it in its entirety and replacing it with the following:

ARM/BALLOON RIDER – MULTI-STATE

Page 1 of 2

DOC NO: 00009767
BOOK  2349 PAGE  205

"The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full over the remaining amortization period of my loan at my new interest rate in substantially equal payments. The original amortization period of my loan is **40** years from the date my first monthly payment is due."

(2) The following is added to the Heading of the Adjustable Rate Rider as second paragraph immediately following:

**"THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY PAYMENTS.   THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ONE TIME AND THE MAXIMUM RATE I MUST PAY."**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY.   YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.   YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY.   IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

Except as modified hereby, the terms of the Note remain in full force and effect.  Terms not otherwise defined herein have the meaning given to them in the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ (Seal)          _____ (Seal)
JUNA SENDOLO                             NYA SENDOLO

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)

RECEIVED FOR RECORD
NORTH PROVIDENCE, RI

MIN ███████████████

Nov 29,2006 01:01:43P

MaryAnn DeAngelus

Town Clerk

ARM/BALLOON RIDER – MULTI-STATE          Page 2 of 2

FNLC Form 33071L2 09/2005 Rev 02/2006
Multi-State ARM/Balloon Rider 40/30

**Exhibit "C"**

RECEIVED FOR RECORD
NORTH PROVIDENCE, RI

RETURN TO:                                               Oct 25,2010 02:50:44P
M. E. Wileman
Orion Financial Group, Inc.                             MaryAnn DeAnselus
2860 Exchange Blvd. # 100                               Town Clerk
Southlake, TX 76092          **Assignment of Mortgage**   Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
**("MERS") SOLELY AS NOMINEE FOR FIRST NLC FINANCIAL SERVICES, LLC** G4318 Miller Road, Flint,
MI 48507 **(Assignor)** by these presents does assign, and set over, without recourse, to **ARCH BAY HOLDINGS, LLC -**
**SERIES 2010C** 3121 MICHELSON DRIVE, SUITE 200, IRVINE, CA 92612 **(Assignee)** the described mortgage,
together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by
**JUNA SENDOLO AND NYA SENDOLO, WIFE AND HUSBAND AS TENANTS BY THE ENTIRETY** to
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') SOLELY AS NOMINEE FOR FIRST NLC
FINANCIAL SERVICES, LLC.   Said mortgage **Dated: 11/28/2006** is recorded in the State of **RI**, County of **North**
**Providence Town** on 11/29/2006, as Book 2349 Page 188. AMOUNT: $ 191,200.00    Property Address: 20
BONAPARTE ST, NORTH PROVIDENCE, RI 02904
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer.
Executed on: October 12, 2010
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR FIRST NLC
FINANCIAL SERVICES, LLC

By: 

D. M. Wileman, Vice President          SENDOLO  CAW *10039864*

State of Texas  County of Tarrant
On 10/12/2010, before me, the undersigned, personally appeared D. M. Wileman, who acknowledged that he/she is Vice
President of/for  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE
FOR FIRST NLC FINANCIAL SERVICES, LLC and that he/she executed the foregoing instrument and that such
execution was done as the free act and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
("MERS") SOLELY AS NOMINEE FOR FIRST NLC FINANCIAL SERVICES, LLC.

JULIE BACON
MY COMMISSION EXPIRES
November 30, 2014

Notary public, Julie Bacon
My commission expires: November 30, 2014

MIN                      MERS Phone 888-679-6377
RI  North Providence Town          CITICAP/WL75/ARCHBAY

Recording Requested By:

Prepared By:
**T.D. Service Company**
**4000 W Metropolitan Dr Ste 400**
**Orange, CA 92868**
**(714) 543-8372, JULIE KIDDER**

And When Recorded Mail To:
**Roosevelt Management Company**
**LLC**
**7301 N. State Highway 161**
**Suite 136**
**Irving TX 75038-0000**
**(714) 543-8372**

_____ Space above for Recorder's use _____

Customer#: [redacted]   Service#: [redacted]   |||||||||||||||||||||||||||||||||||||||||||||+

Loan#: [redacted] / [redacted]

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **ARCH BAY HOLDINGS, LLC - SERIES 2010C, 15480 LAGUNA CANYON ROAD SUITE 210, IRVINE, CA 92618-0000**, by these presents does convey, grant, bargain, sell, assign, transfer and set over to:

US Bank, National Association, not in its
_____
individual capacity, but solely as Trustee for the
_____
RMAC Trust, Series **2013-1T**
_____
_____

_____, **60 LIVINGSTON AVE EP-MN-WS3D, ST. PAUL, MN 55107-0000**, the described Mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$191,200.00** is recorded in the State of **RHODE ISLAND**, County of **PROVIDENCE**, Township of **NORTH PROVIDENCE TOWN** Official Records, dated **NOVEMBER 28, 2006** and recorded on ---, as Instrument No. 9767, in Book No. 2349, at Page No. 188.
Original Mortgagor: **JUNA SENDOLO AND NYA SENDOLO, WIFE AND HUSBAND AS TENANTS BY THE ENTIRETY**. Original Mortgagee: **FIRST NLC FINANCIAL SERVICES, LLC.** Property Address: **20 BONAPARTE STREET, NORTH PROVIDENCE, RI 02904-0000**.
Date: _____12-28-2012_____
**ARCH BAY HOLDINGS, LLC - SERIES 2010C**

By: _____
     **Robert Mattesky, CIO**

State of     **CALIFORNIA**                    }
County of    **ORANGE**                        } ss.

On _12-28-2012_, before me, _Monyrith Leng_, a Notary Public, personally appeared
**Robert Mattesky**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
Witness my hand and official seal.

**Exhibit D**

**ASSET VALUATION & MARKETING INC.**
*Valuation Solutions™*

| Project Name | RLM081413 | Completion Date | 08/20/2013 |
|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | |
| City | Providence | State | RI | Zip | 02904 |

## Subject Property

| | | | |
|---|---|---|---|
| Location | Suburban | Currently Listed | No |
| Property Type | Single Family-Detached | Listed in Last 36 Months | No |
| Occupancy | Occupied | Listing Company | |
| Fair Market Rent (All Units) | $1,200 | List Company Phone | |
| Recommended Inspections | ☑ Termite | Days on Market | |
| Other: Radon | ☑ Structural | List Status | |
| | ☐ Well | | |
| | ☐ Septic | Original List Price | |
| | ☑ Physical | Last Known Sale Date | 11/29/2006 |
| | ☐ System | Last Known Sale Price | $239,000 |

| | | | |
|---|---|---|---|
| County | Providence | Zoning Code | 01 |
| APN | 5/642 | Zoning Description | Residential |
| Current Use | Residential | Zoning Compliance | Legal |
| Best Use. If no, explain | Yes | If Illegal, explain: | |

## Subject and Comparable Sales Characteristics

| Attribute | Subject | ☑ Comp Sale 1 | ☐ Comp Sale 2 | ☐ Comp Sale 3 |
|---|---|---|---|---|
| Address | 20 Bonaparte St, Providence,RI 02904 | 12 Rome Ave Providence, RI 02904 | 33 Benjanin Dr Providence, RI 02904 | 12 Maynard St Providence, RI 02904 |
| Proximity | | 0.28 Miles | 0.55 Miles | 0.15 Miles |
| Broker Inspected | Yes | No | No | No |
| Comparability | | Inferior | Inferior | Superior |
| Style | Cape | Ranch | Ranch | Split-Level |
| Condition | Average | Average | Average | Average |
| Construction | Framed | Framed | Framed | Framed |
| Year Built | 1971 | 1967 | 1957 | 1992 |
| Lot Size | 0.30 Acres | 0.18 Acres | 0.21 Acres | 0.23 Acres |
| # Units | 1 | 1 | 1 | 1 |
| GLA | 1152 | 1136 | 1244 | 1085 |
| Room Count | 6 | 6 | 6 | 5 |
| Bed Count | 4 | 3 | 3 | 3 |
| Bath Count | 2.0 | 1.0 | 1.0 | 2.0 |
| Basement | Yes | Yes | Yes | Yes |
| Basement Finished % | 0 | 75 | 50 | 100 |
| Basement included in GLA | No | No | No | No |
| Garage/Carport | None | Attached | Attached | None |
| Number of Stalls | 0 | 1 | 1 | 0 |
| Parking | Driveway | Driveway | Driveway | Driveway |
| Pool | No | No | No | No |
| View | Residential | Residential | Residential | Residential |
| Waterfront | No | No | No | No |
| Data Source | Tax Record/Assessor | MLS | MLS | MLS |
| Finance Type | | Conventional | FHA/VA | FHA/VA |
| Sale Type | | Owner/Resale | Owner/Resale | REO/Bank/HUD |
| Sale Date | | 03/15/2013 | 07/18/2013 | 04/24/2013 |
| DOM | | 58 | 20 | 31 |
| Original List Price | | $169,450 | $149,000 | $166,500 |
| List Price at Sale | | $169,450 | $149,000 | $166,500 |
| Sales Price | | $169,000 | $153,000 | $171,000 |
| $/Sq Ft (As-Is) | 149 | 149 | 123 | 158 |

## Sales Comments / Sale Concessions

| | |
|---|---|
| Comp Sale 1 | Kitchen renovated in 2011 with maple countertops and bamboo floor.  New windows and hardwoods.  +$2,500

Concession: None |
| Comp Sale 2 | Like new roof, vinyl siding. 10% DOM adjustment of $15,300 + $3,500 adjustment = $18,800.

Concession: $4,000 seller concession |
| Comp Sale 3 | Finished lower level with laundry room.  Sold as-is, needs very little work.  10% DOM adjustment of $17,100 - $13,839 adjustment = $3,261.

Concession: $3,839 seller concession |

INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED
www.AssetVal.com - (800) 560-7350

**ASSET VALUATION & MARKETING INC.**
*Valuation Solutions™*

| Project Name | RLM081413 | Completion Date | 08/20/2013 |
|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | |
| City | Providence | State | RI | Zip | 02904 |

## Subject and Comparable Listing Characteristics

| Attribute | Subject | ☑ Comp List 1 | ☐ Comp List 2 | ☐ Comp List 3 |
|---|---|---|---|---|
| Address | 20 Bonaparte St, Providence,RI 02904 | 60 Tiffany St Providence, RI 02904 | 6 Plymouth Rd Providence, RI 02904 | 63 Thelma Ave Providence, RI 02904 |
| Proximity | | 0.03 Miles | 0.49 Miles | 0.22 Miles |
| Broker Inspected | Yes | No | No | No |
| Comparability | | Inferior | Inferior | Superior |
| Style | Cape | Ranch | Ranch | Ranch |
| Condition | Average | Average | Average | Good |
| Construction | Framed | Framed | Framed | Framed |
| Year Built | 1971 | 1956 | 1954 | 1976 |
| Lot Size | 0.30 Acres | 0.14 Acres | 0.18 Acres | 0.13 Acres |
| # Units | 1 | 1 | 1 | 1 |
| GLA | 1152 | 1164 | 1200 | 1040 |
| Room Count | 6 | 5 | 6 | 7 |
| Bed Count | 4 | 3 | 3 | 3 |
| Bath Count | 2.0 | 1.0 | 1.0 | 1.1 |
| Basement | Yes | Yes | Yes | Yes |
| Basement Finished % | 0 | 100 | 25 | 100 |
| Basement included in GLA | No | No | No | No |
| Garage/Carport | None | Attached | Attached | None |
| Number of Stalls | 0 | 2 | 1 | 0 |
| Parking | Driveway | Driveway | Driveway | Driveway |
| Pool | No | No | No | No |
| View | Residential | Residential | Residential | Residential |
| Waterfront | No | No | No | No |
| Data Source | Tax Record/Assessor | MLS | MLS | MLS |
| Finance Type | | FHA/VA | FHA/VA | FHA/VA |
| List Type | | Owner/Resale | Owner/Resale | Owner/Resale |
| List Date | | 03/24/2013 | 04/26/2013 | 08/01/2013 |
| DOM | | 145 | 113 | 15 |
| Pending | | No | No | No |
| Original List Price | | $179,900 | $178,900 | $184,900 |
| Current List Price | | $169,900 | $169,500 | $179,500 |
| $/Sq Ft (As-Is) | 149 | 146 | 141 | 173 |

## Listing Comments / Pricing Concessions

| Comp Listing 1 | Estate sale.  Finished basement.  Sold as-is.  Concession: None |
|---|---|
| Comp Listing 2 | New cherry kitchen with granite.  Hardwood floors.  Walkout to private patio.  Concession: None |
| Comp Listing 3 | New deck, patio, vinyl siding and stainless steel appliances.  Concession: None |

## 90-120 Days Market Estimates

| | As-Is | | Repaired | |
|---|---|---|---|---|
| Probable Sale Price | $172,000 | Probable Sale Price | $173,000 |
| List Price | $179,000 | List Price | $180,000 |

## Quick Sale Estimate

| Probable Quick Sale Price | $150,000 | Quick Sale Discount | 12.79 % |
|---|---|---|---|

## Lot Values

| Estimated Lot Value Low | $75,000 | Estimated Lot Value High | $100,000 |
|---|---|---|---|

## Broker Information

| Broker Name | Normand Jolicoeur | Cell | 401-578-5221 |
|---|---|---|---|
| License Number | C15286 | Email | americanhomesbpo@gmail.com |
| License Expiration | 04/30/2014 | Completion Date | 08/20/2013 |
| Company Name | American Homes and CRE | Distance to Subject | 10.00 Miles |
| Address | PO Box 418, Pascoag, RI. 02859 | Company Phone | 401-578-5221 |

INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED
www.AssetVal.com - (800) 560-7350

**ASSET VALUATION & MARKETING** INC.
*Valuation Solutions™*

| Project Name | RLM081413 | Completion Date | 08/20/2013 |
|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | |
| City | Providence | State | RI | Zip | 02904 |

## General Market Conditions

Current Market Conditions ☐ Excellent ☐ Improving ☑ Stable ☐ Slow ☐ Depressed
Employment Conditions ☐ Increasing ☑ Stable ☐ Decreasing
Market Values for this type of property have
☐ Appreciated _____ % in the past _____ months
☐ Depreciated _____ % in the past _____ months
☑ Remained Stable for the past _____ 9 _____ months

Value Range for comparable properties $135,000 to $190,000
Predominant Value for this type of property $160,000
Rental Range for comparable properties $800 to $1,400
Current Inventory of this type of property ☐ Undersupply ☑ Balanced ☐ Oversupply
Estimated Occupancy of subject's neighborhood: 85 % Owner 14 % Tenant 1 % Vacant
Approximate number of comparable properties for sale: 11 Typical DOM of sales 75
Is the subject located in an REO/short sale driven neighborhood? ☐ Yes ☑ No
Approximate number of competing listings that are REO or corporate-owned: 3
% Distressed Sales in subject's neighborhood/immediate market area: 25 % Distressed Discount 15 %
Number of boarded or blocked up homes 0
Crime/Vandalism ☑ Low Risk ☐ Medium Risk ☐ High Risk
General Comments about market conditions:

The subject's neighborhood consists of approximately 85% single family, 15% 2-4 unit dwellings. Average GLA - 1,000sf-1,200sf, lot size 0.20 acres, year built 1965-1970. Located within 1 mile of amenities and highway access. Approximately 75% of transactions within the past 6 months are fair market transactions. Values have been relatively stable for the past 6 months. Similar stability is expected for the remainder of the year.

## Subject Marketability

HOA? ☐ Yes ☑ No HOA Name _____
HOA Contact _____ Phone Number _____
HOA Fee _____ HOA Fee Schedule _____ Fees Current? ☐ Yes ☐ No Delinquent Amount _____
Fee Includes: ☐ Insurance ☐ Landscaping ☐ Pool ☐ Tennis ☐ Other _____
Any known litigation involving the HOA? ☐ Yes ☐ No
If yes, explain: _____

Recommended Marketing Strategy ☐ As-Is ☑ Minimal Lender Required Repairs ☐ Repaired
Most Likely Buyer ☑ Owner Occupant ☐ Investor
Considering available indicators, the current occupant of the subject is most likely ☑ Owner ☐ Tenant ☐ Vacant
Does the subject conform to the neighborhood? ☑ Yes ☐ No
For the neighborhood, the subject is an: ☐ Under Improvement ☑ Appropriate Improvement ☐ Over Improvement
Is the subject's condition consistent with properties in the neighborhood? ☑ Yes ☐ No
Does the subject property appear to have been updated? ☐ Yes ☑ No
Does the subject property need emergency repairs? ☐ Yes ☐ No ☑ Unknown
If yes, explain: _____
Does the subject property show evidence of vandalism? ☐ Yes ☑ No
If yes, explain: _____
Are all types of financing available for the subject? ☑ Yes ☐ No
If no, explain: _____
Describe any adverse environmental/safety conditions:
None were observed at the time of inspection.

Positive attributes to marketability:
Above average lot size. Located within 1 mile of amenities and highway access.

Negative attributes to marketability:
Lack of garage. Minor cosmetics needed on exterior.

**ASSET VALUATION & MARKETING** INC.
*Valuation Solutions™*

| Project Name | RLM081413 | Completion Date | 08/20/2013 |
|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | |
| City | Providence | State | RI | Zip | 02904 |

## Addendum

Adjustments were made for GLA at a rate of $5,000/100 square feet, lot size at $2,500/0.10 acres, year built at $5,000/10 years, bathrooms at $5,000-full/$2,500 half, and garages at $5,000 stall.  A 10% adjustment was made for sold comps with 0-40 DOM in order to illustrate a 90-120 day marketing time.

## Repair Estimate Details

| Repair Items | Repair | Replace | Est. Cost | Repair Items | Repair | Replace | Est. Cost |
|---|---|---|---|---|---|---|---|
| Exterior Paint | Yes | No | $500 | Electrical | No | No | $ |
| Roofing | No | No | $ | Heating/Air | No | No | $ |
| Structural | No | No | $ | Plumbing | No | No | $ |
| Carpentry in and out | No | No | $ | Wallpaper/Sheetrock | No | No | $ |
| Landscaping | No | No | $ | Initial Trashout/Clean | No | No | $ |
| Carpet | No | No | $ | Discoloration (Mildew, Etc) | No | No | $ |
| Tile/Vinyl | No | No | $ | Pest/Termite | No | No | $ |
| Interior Paint | No | No | $ | Floors | No | No | $ |
| Appliances | No | No | $ | Cleaning | No | No | $ |
| Other: | | | | | No | No | $ |

☐ Rehab not justified (cost of repairs would exceed the additional value gained from the repairs)

All repairs are cosmetic in nature  ☑ Yes  ☐ No

Additional Remarks:

Chipping paint was observed along second story on left side and on front near address numbers.

Total Estimated Repairs/Replacement Costs    $500

## Compliance

By submitting this report, I agree that I will work with Client to clarify or correct this valuation as necessary to meet its client's requirements. Client will never communicate a predetermined, expected or qualifying estimate of value, however if additional information about the subject property or comparable properties is presented, I agree to give consideration to this information. I understand that providing faulty or erroneous information or failure to respond to a clarification/correction request are grounds for non-payment of this report as well as deactivation of my Realtor Profile in the Client system.

State Compliance: This opinion or analysis is not a certified appraisal or an appraisal that conforms to the Uniform Standards of Professional Appraisal Practice (USPAP).  It is intended only for the benefit of the addressee for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing offering, or sale price of the real property and not for any other purpose, including but not limited to, lending purpose excepting those specifically provided under R. I. Gen. Laws 5-20.7-3.

## ESignature

I Normand Jolicoeur, with License# = C15286, Expiration Date = 04/30/2014, Contact Phone# = 401-578-5221 and Email Address = americanhomesbpo@gmail.com confirm that I have taken the subject photos, selected the comps and set the values for this CMA.  Initials of my name are NJ. Dated 08/16/2013.



| Project Name | RLM081413 | Completion Date | | 08/20/2013 |
|---|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | | |
| City | Providence | State | RI | Zip | 02904 |

### AERIAL MAP



Distant Map

### AERIAL MAP



Proximate Map



| Project Name | RLM081413 | Completion Date | | 08/20/2013 | |
|---|---|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | | JUNA SENDOLO | |
| Street Address | 20 Bonaparte St | | | | |
| City | Providence | State | RI | Zip | 02904 |

**FRONT VIEW**



**FRONT ANGLED VIEW**





| Project Name | RLM081413 | Completion Date | | 08/20/2013 |
|---|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | | |
| City | Providence | State | RI | Zip | 02904 |

**STREET VIEW**



**ADDRESS VERIFICATION**



INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED
www.AssetVal.com - (800) 560-7350



| Project Name | RLM081413 | Completion Date | 08/20/2013 |
|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | |
| City | Providence | State | RI | Zip | 02904 |

## EXTERIOR PHOTO



## MAP



Map

INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED
www.AssetVal.com - (800) 560-7350

| Project Name | RLM081413 | Completion Date | | 08/20/2013 | |
|---|---|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | | JUNA SENDOLO | |
| Street Address | 20 Bonaparte St | | | | |
| City | Providence | State | RI | Zip | 02904 |

**COMPARABLE SALE 1**



**ASSET VALUATION & MARKETING** INC.

*Valuation Solutions™*

| Project Name | | RLM081413 | Completion Date | | 08/20/2013 |
|---|---|---|---|---|---|
| Inspection Only | | Exterior | Borrower Name | | JUNA SENDOLO |
| Street Address | | 20 Bonaparte St | | | |
| City | | Providence | State | RI | Zip | 02904 |

## Comparable Sale 1 - Page 1 of 1

### Single Family - MLS # 1031559                                               Sold

*12 ROME AV*

*North Providence, RI 02904*

NBRHD: WOODWARD

| | | | |
|---|---|---|---|
| **Plat:** | 04 | **Lot:** | 712 |
| **Zoning:** | | **Block:** | |
| **Assessment:** | $ 168200.00 | | |
| **Real Estate** | $ 4000.00 | | |
| **Tax Year:** | 2012 | | |
| **Fire District Tax:** | $ 0.00 | | |
| **Asn Fee:** | | **Asn Fee Per:** | |

**Days On Market:** 58

| | | |
|---|---|---|
| **Sold Price:** | | $ 169,000 |
| **List Price:** | | $ 169,450 |
| **Original Price:** | | $ 169,450 |
| **Aprox Lot SF:** | | 8,048 SqFt |
| **Aprox Acres:** | | |
| **Frontage:** | | |

| | |
|---|---|
| Internet / Address Display: | Y/Y |
| IDX / Address Display: | Y/Y |
| Consumer / Address Display: | Y/Y |
| Allow AVM / Comments: | N/N |
| Send to ListHub: | Y |

**Open House:**

| | | | | |
|---|---|---|---|---|
| **Type:** | Ranch | **Year Built:** | 1967 | **Full / Half Baths:** 1 / 0 | **Foundation:** |
| **Aprox Abv Grd Liv Area:** | 1136.0 | **Bedrooms:** | 3 | **Under Construction:** N | **REO/Lender Owned:** N   **Short Sale:** N |
| **Aprox Blw Grd Liv Area:** | 600 | **Total Rms:** | 6 | **Levels:** 1 | **Subsidized Housing:** N |
| **Aprox Total Liv Area:** | 1736 | **Living Area Source:** Seller | | **Historic:** Unknown |

**Large open floor plan lends itself to today's modern living.  New 2011 kitchen w/ maple cabinets, quartz countertops & bamboo floor.  Central air, new windows,hardwoods, finished basement w/walkout. Dining opens to a patio and wonderful fenced yard.**

| | | | |
|---|---|---|---|
| **Lower Level:** | FAM RM/LDRY/WALKOUT | **Fin Floor:** | Hardwood, Ceramic, Wall to Wall Carpet |
| **1st Floor:** | LR/DA/EIK/3BEDS/TBTS | **Wall:** | Plaster |
| **2nd Floor:** | | **Basement:** | Full, Finished, Walkout |
| **3rd Floor:** | | **Fireplace:** | 0 / None |
| **Living Room:** | **Master Bdrm:** | **Handicap Acc:** | |
| **Interior:** | | | |
| **Rooms:** | Dining Area, Eat In Kitchen, Family Room, Laundry Room, Living Room | | |

**Equipment:** Refrigerator, Oven/Range, Dishwasher, Microwave, Cable TV

| | | | | |
|---|---|---|---|---|
| **Garage:** | Attached | | **Garage Spaces:** 1 | **On-Site Parking:** 3 |
| **Exterior:** | Shingles, Insulated Glass Windows, Storm Door, Patio | | | |
| **Water Amenities:** | | | **Underground Tank Size/Type:** Unknown / Unknown | |
| **Near:** | Shopping, Bus, Commuter Bus, Highway Access, Private School, Hospital, Public School, Recreational Facility, Swimming, Tennis, Golf | | | |
| **Lot:** | Fenced Yard | | | |
| **Heat System:** | Forced Air | **Electric:** 100 Amps | | |
| **Heating Fuel:** | Gas | **Water Supply:** Connected | **Plumbing:** Mixed | **Insulation:** Ceiling |
| **Aprx Heat $:** | 901-1200 | **Hot Water:** Gas, Tank | **Cooling:** Central Air | **Sewer:** Connected |

| | |
|---|---|
| **Listing Agent: 12916** | **Listing Office: RESI** |
| Barbara Dacey | Residential Properties, Ltd. |
| bdacey@residentialproperties.com | 401-274-6740 |
| 401-553-6322 | |

| | | | | |
|---|---|---|---|---|
| **List Date:** 01/07/2013 | **Entry Only:** N | **Limited Service:** N | **Occupancy:** | Negotiable | **Lockbox / #:** None |
| **Exp Date:** 04/02/13 | **Photo:** F | **RE Lic Owner:** N | **List Contract:** Exclusive Right to Sell | **Sign on Property:** Y |

**Show Instr:** CALL BARBARA 527.6745

**Comp to Coop Broker:** 3%NS

**Comp Comments:**

| | | | | |
|---|---|---|---|---|
| **Off Mkt date:** 01/30/13 | **Closed Date:** 03/15/13 | **List Price:** $ 169,450 | **Seller 2nd:** N | |
| **Contract date:** 01/30/13 | **Financing:** Conv Fixed | **Sold Price:** $ 169,000 | **Seller Pays CC:** N | **Seller Paid:** |
| **Terms:** | | **Type of sale:** Conventional/Market Value | | |
| **Pertinent Sale Data:** | | | | **Days on Market:** 58 |
| **Coop Office:** CBRB18 / Coldwell Banker Res. Brokerage / 401-333-0010 | **Coop Agent:** 31507 / Donna Gomes / 401-787-7570 | | | |

Broker Display       Information Deemed Reliable But Not Guaranteed. All compensation offered through MLS to the cooperating company       08/16/13
                          is paid based exclusively on its becoming procuring cause of the purchaser.

INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED
www.AssetVal.com - (800) 560-7350



| Project Name | RLM081413 | Completion Date | | 08/20/2013 |
|---|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | | |
| City | Providence | State | RI | Zip | 02904 |

**COMPARABLE SALE 2**



| Project Name | RLM081413 | Completion Date | 08/20/2013 |
|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | |
| City | Providence | State | RI | Zip | 02904 |

## Comparable Sale 2 - Page 1 of 1

### Single Family - MLS # 1041711 — **Sold**

*33 BENJAMIN DR*

*North Providence, RI 02904*

*NBRHD: LOUISQUISSET*



| | | | |
|---|---|---|---|
| **Plat:** 23A | **Lot:** 1212 | Sold Price: | $ 153,000 |
| **Zoning:** | **Block:** | List Price: | $ 149,000 |
| **Assessment:** | $ 186500.00 | Original Price: | $ 149,000 |
| **Real Estate** | $ 4000.00 | Aprox Lot SF: | 9,365 SqFt |
| **Tax Year:** | 2012 | Aprox Acres: | |
| **Fire District Tax:** | $ 0.00 | Frontage: | |
| **Asn Fee:** | **Asn Fee Per:** | | |

Internet / Address Display: Y/Y
IDX / Address Display: Y/Y
Consumer / Address Display: Y/Y
Allow AVM / Comments: N/N
Send to ListHub: Y

**Open House:**

**Days On Market:** 20

| | | |
|---|---|---|
| **Type:** Split Level | **Year Built:** 1957 | **Full / Half Baths:** 1 / 0 | **Foundation:** |
| **Aprox Abv Grd Liv Area:** 1244.0 | **Bedrooms:** 3 | **Under Construction:** N | **REO/Lender Owned:** N **Short Sale:** N |
| **Aprox Blw Grd Liv Area:** 466 | **Total Rms:** 6 | **Levels:** 1 | **Subsidized Housing:** N |
| **Aprox Total Liv Area:** 1710 | **Living Area Source:** Tax Assessor | | **Historic:** Unknown |

**GREAT OPPORTUNITY!! NICE SPRAWLING RANCH SET ON CORNER LOT FEATURES 3 BEDS, NICE FLOOR PLAN, VINYL SIDING, LIKE NEW ROOF, CENTRAL AIR AND ONE CAR GARAGE. TO BE SOLD IN "AS IS" CONDITION!!**

**Lower Level:** PARTLY FINISHED, WALKOUT

**1st Floor:** EIK,DA,LR/FR,3BEDS,FULL BATH

**2nd Floor:**

**3rd Floor:**

**Living Room:** **Master Bdrm:**

**Interior:**

**Rooms:** Dining Area, Eat In Kitchen, Laundry Area

**Equipment:** Refrigerator, Oven/Range, Washer, Cable TV

**Fin Floor:** Wall to Wall Carpet, Laminate, Hardwood

**Wall:** Ceramic

**Basement:** Full, Partial Finished, Walkout

**Fireplace:** 0 / None

**Handicap Acc:**

**Garage:** Detached **Garage Spaces:** 1 **On-Site Parking:** 3

**Exterior:** Masonry, Vinyl Siding, Insulated Glass Windows, Storm Windows

**Water Amenities:** **Underground Tank Size/Type:** None / None

**Near:** Shopping, Bus, Highway Access, Private School, Public School, Hospital, Recreational Facility, Swimming, Tennis

**Lot:**

**Heat System:** Forced Water **Electric:** 100 Amps, Circuit Breaker

**Heating Fuel:** Gas **Water Supply:** Connected **Plumbing:** Mixed **Insulation:** Unknown

**Aprx Heat $:** Undetermined **Hot Water:** Gas, Tank **Cooling:** Central Air **Sewer:** Connected

| Listing Agent: 13099 | Listing Office: RMAX12 | Showing Agent: 13099 |
|---|---|---|
| Kenneth Scotti | RE/MAX Preferred | Kenneth Scotti |
| scottiken@hotmail.com | 401-353-2200 | KENSCOTTIREALTOR@GMAIL.COM |
| 401-354-4971 | | 401-354-4971 |

| | | | | | |
|---|---|---|---|---|---|
| **List Date:** 05/21/2013 | **Entry Only:** N | **Limited Service:** N | **Occupancy:** Available for rent | **Lockbox / #:** Company |
| **Exp Date:** 11/30/13 | **Photo:** F | **RE Lic Owner:** N | **List Contract:** Exclusive Right to Sell | **Sign on Property:** Y |
| **Show Instr:** KENSCOTTIREALTOR@GMAIL.COM | | | | |

**Comp to Coop Broker:** 2.25% VNS

**Comp Comments:**

| | | | | |
|---|---|---|---|---|
| **Off Mkt date:** 06/13/13 | **Closed Date:** 07/18/13 | **List Price:** $ 149,000 | **Seller 2nd:** N | |
| **Contract date:** 06/13/13 | **Financing:** Fha/Va | **Sold Price:** $ 153,000 | **Seller Pays CC:** Y | **Seller Paid:** $ 4000 |
| **Terms:** | | **Type of sale:** Conventional/Market Value | | |
| **Pertinent Sale Data:** | | | | **Days on Market:** 20 |
| **Coop Office:** KELW / Keller Williams Realty / 401-785-1700 | | **Coop Agent:** 29846 / Crystal D'Agostino /HOPE / 401-714-2588 | | |

Broker Display — Information Deemed Reliable But Not Guaranteed. All compensation offered through MLS to the cooperating company is paid based exclusively on its becoming procuring cause of the purchaser. — 08/16/13

| Project Name | RLM081413 | Completion Date | | 08/20/2013 |
|---|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | | |
| City | Providence | State | RI | Zip | 02904 |

### COMPARABLE SALE 3



INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED
www.AssetVal.com - (800) 560-7350

| Project Name | RLM081413 | Completion Date | 08/20/2013 | | |
|---|---|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | JUNA SENDOLO | | |
| Street Address | 20 Bonaparte St | | | | |
| City | Providence | State | RI | Zip | 02904 |

## Comparable Sale 3 - Page 1 of 1



### Single Family - MLS # 1031543 — **Sold**

**12 MAYNARD ST**

**North Providence, RI  02904**

NBRHD: NORTH PROVIDENCE

| | | | |
|---|---|---|---|
| **Plat:** 5 | **Lot:** 500 | Sold Price: | $ 171,000 |
| **Zoning:** | **Block:** | List Price: | $ 166,500 |
| **Assessment:** $ 227400.00 | | Original Price: | $ 166,500 |
| **Real Estate** $ 5492.00 | | Aprox Lot SF: | 10,018 SqFt |
| **Tax Year:** 2012 | | Aprox Acres: | |
| **Fire District Tax:** $ 0.00 | | Frontage: | |

| | |
|---|---|
| Internet / Address Display: | Y/Y |
| IDX / Address Display: | Y/Y |
| Consumer / Address Display: | Y/Y |
| Allow AVM / Comments: | Y/Y |
| Send to ListHub: | Y |

**Asn Fee:**   **Asn Fee Per:**

**Open House:**

**Days On Market:** 31

| **Type:** Ranch | **Year Built:** 1992 | **Full / Half Baths:** 2 / 0 | **Foundation:** | |
|---|---|---|---|---|
| **Aprox Abv Grd Liv Area:** 1085.0 | **Bedrooms:** 3 | **Under Construction:** N | **REO/Lender Owned:** Y | **Short Sale:** N |
| **Aprox Blw Grd Liv Area:** 1000 | **Total Rms:** 5 | **Levels:** 2 | **Subsidized Housing:** N | |
| **Aprox Total Liv Area:** 2085 | **Living Area Source:** Tax Assessor | **Historic:** N | | |

DEBUT! SPACIOUS RANCH W/ OPEN LIVING/KITCHEN. OFFERS 3-4 BEDS, 2 BATHS, FINISHED LOWER W/ LAUNDRY ROOM. SPACIOUS YARD LAST ON A DEAD END STREET. SOLD AS IS, NEEDS VERY LITTLE WORK. SEE ATTACHMENT FOR INSTRUCTIONS. H+B ENDS THURSDAY 1/17 AT 9:OOAM.

| | |
|---|---|
| **Lower Level:** FR,BR,B,LDRY | **Fin Floor:** Laminate, Ceramic |
| **1st Floor:** EIK,FR,3BR,B | **Wall:** |
| **2nd Floor:** | **Basement:** Full, Finished |
| **3rd Floor:** | **Fireplace:** 0 / None |
| **Living Room:**   **Master Bdrm:** | **Handicap Acc:** |
| **Interior:** | |
| **Rooms:** | |

**Equipment:**

| | | | |
|---|---|---|---|
| **Garage:** None | | **Garage Spaces:** 0 | **On-Site Parking:** |
| **Exterior:** Vinyl Siding | | | |
| **Water Amenities:** | | **Underground Tank Size/Type:** None / None | |
| **Near:** | | | |
| **Lot:** | | | |
| **Heat System:** Forced Water | | **Electric:** 100 Amps, Circuit Breaker | |
| **Heating Fuel:** Gas | **Water Supply:** Connected | **Plumbing:** Mixed | **Insulation:** Unknown |
| **Aprx Heat $:** Undetermined | **Hot Water:** Gas | **Cooling:** Individual Unit | **Sewer:** Connected |

| Listing Agent: 1328 | Listing Office: ALBT | Showing Agent: 1328 |
|---|---|---|
| Carole Scaralia | Albert Realtors | Carole Scaralia |
| carole@albertrealtors.com | 401-944-3377 | carole@albertrealtors.com |
| 401-944-3377 | | 401-451-3598 |

| | | | | |
|---|---|---|---|---|
| **List Date:** 01/07/2013 | **Entry Only:** N | **Limited Service:** N | **Occupancy:** Negotiable | **Lockbox / #:** Company |
| **Exp Date:** 04/07/13 | **Photo:** R | **RE Lic Owner:** N | **List Contract:** Exclusive Right to Sell | **Sign on Property:** Y |

**Show Instr:** Email Carole, First 15 days owner occupants only, HomePath Reno Mortgage Available

**Comp to Coop Broker:** 3% NS

**Comp Comments:** 3% -$62.50 tech fee, Seller request that all offers go through HomePath.com. Buyer responsible for smoke cert.

| | | | | |
|---|---|---|---|---|
| **Off Mkt date:** 01/17/13 | **Closed Date:** 04/24/13 | **List Price:** $ 166,500 | **Seller 2nd:** N | |
| **Contract date:** 01/17/13 | **Financing:** Fha/Va | **Sold Price:** $ 171,000 | **Seller Pays CC:** Y | **Seller Paid:** $ 3839 |
| **Terms:** | | **Type of sale:** REO/Bank Owned | | |
| **Pertinent Sale Data:** | | | | **Days on Market:** 31 |
| **Coop Office:** ROUS / Roundstone Realty, Llc / 401-499-5700 | | **Coop Agent:** 26630 / Sean Hevenor / 401-499-5700 | | |

Broker Display   Information Deemed Reliable But Not Guaranteed. All compensation offered through MLS to the cooperating company
is paid based exclusively on its becoming procuring cause of the purchaser.   08/16/13

| Project Name | RLM081413 | Completion Date | | 08/20/2013 |
|---|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | | |
| City | Providence | State | RI | Zip | 02904 |

## COMPARABLE LISTING 1



INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED
www.AssetVal.com - (800) 560-7350

| Project Name | RLM081413 | Completion Date | | 08/20/2013 |
|---|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | | |
| City | Providence | State | RI | Zip | 02904 |

## Comparable Listing 1 - Page 1 of 1

### Single Family - MLS # 1036455                                    Active

**60 TIFFANY ST**

**North Providence, RI 02904**

**NBRHD: NORTH PROVIDENCE**



| | | | |
|---|---|---|---|
| **Plat:** 5 | **Lot:** 525 | | |
| **Zoning:** | **Block:** | | |
| **Assessment:** $ 179500.00 | | | |
| **Real Estate** $ 4334.00 | | | |
| **Tax Year:** 2013 | | | |
| **Fire District Tax:** $ 0.00 | | | |
| **Asn Fee:** | **Asn Fee Per:** | | |

**Sold Price:**
**List Price:** $ 169,900
**Original Price:** $ 179,900

**Aprox Lot SF:** 6,098 SqFt
**Aprox Acres:**
**Frontage:**

**Internet / Address Display:** Y/Y
**IDX / Address Display:** Y/Y
**Consumer / Address Display:** Y/Y
**Allow AVM / Comments:** N/N
**Send to ListHub:** Y

**Open House:**

**Days On Market:** 145

| | | | |
|---|---|---|---|
| **Type:** Ranch | **Year Built:** 1956 | **Full / Half Baths:** 1 / 0 | **Foundation:** |
| **Aprox Abv Grd Liv Area:** 1164.0 | **Bedrooms:** 3 | **Under Construction:** N | **REO/Lender Owned:** N **Short Sale:** N |
| **Aprox Blw Grd Liv Area:** 1164 | **Total Rms:** 5 | **Levels:** 1 | **Subsidized Housing:** N |
| **Aprox Total Liv Area:** 2328 | **Living Area Source:** Tax Assessor | | **Historic:** N |

**Estate Sale 3 Bed ranch with 2 car garage. Full Finish basement. Has lots of potential. Being sold in "as is". must see. Seller Motivated.**

| | |
|---|---|
| **Lower Level:** | **Fin Floor:** Hardwood |
| **1st Floor:** | **Wall:** |
| **2nd Floor:** | **Basement:** Finished |
| **3rd Floor:** | **Fireplace:** 0 / None |
| **Living Room:** **Master Bdrm:** | **Handicap Acc:** |
| **Interior:** | |
| **Rooms:** | |

**Equipment:**

| | | |
|---|---|---|
| **Garage:** Attached | **Garage Spaces:** 2 | **On-Site Parking:** |
| **Exterior:** Shingles, Brick | | |
| **Water Amenities:** | **Underground Tank Size/Type:** Unknown / Heating Oil | |
| **Near:** | | |
| **Lot:** | | |
| **Heat System:** Forced Air | **Electric:** 100 Amps | |
| **Heating Fuel:** Other | **Water Supply:** Connected | **Plumbing:** Other | **Insulation:** Unknown |
| **Aprx Heat $:** Undetermined | **Hot Water:** None | **Cooling:** None | **Sewer:** Unknown |

| Listing Agent: 26263 | Listing Office: CBRB15 |
|---|---|
| Rose Senerchia | Coldwell Banker Res. Brokerage |
| rose.senerchia@nemoves.com | 401-739-9500 |
| 401-480-1991 | |

| | | | | |
|---|---|---|---|---|
| **List Date:** | **Entry Only:** N | **Limited Service:** N | **Occupancy:** 30-60 Days | **Lockbox / #:** None |
| **Exp Date:** | **Photo:** F | **RE Lic Owner:** N | **List Contract:** Exclusive Right to Sell | **Sign on Property:** Y |
| **Show Instr:** Call or Text Rose 401-480-1991 | | | | |

**Comp to Coop Broker:** 3% VNS
**Comp Comments:**

| | | | | |
|---|---|---|---|---|
| **Off Mkt date:** | **Closed Date:** | **List Price:** $ 169,900 | **Seller 2nd:** | |
| **Contract date:** | **Financing:** | **Sold Price:** | **Seller Pays CC:** | **Seller Paid:** |
| **Terms:** | | **Type of sale:** | | |
| **Pertinent Sale Data:** | | | | **Days on Market:** 145 |
| **Coop Office:** | | **Coop Agent:** | | |

Broker Display    Information Deemed Reliable But Not Guaranteed. All compensation offered through MLS to the cooperating company    08/16/13
is paid based exclusively on its becoming procuring cause of the purchaser.

INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED
www.AssetVal.com - (800) 560-7350

| Project Name | RLM081413 | Completion Date | | 08/20/2013 | |
|---|---|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | | JUNA SENDOLO | |
| Street Address | 20 Bonaparte St | | | | |
| City | Providence | State | RI | Zip | 02904 |

## COMPARABLE LISTING 2



| Project Name | RLM081413 | Completion Date | 08/20/2013 |
|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | |
| City | Providence | State | RI | Zip | 02904 |

## Comparable Listing 2 - Page 1 of 1

### Single Family - MLS # 1039512 — Active

**6 PLYMOUTH RD**

**North Providence, RI  02904**

**NBRHD: COUNTRY ESTATES**

| | | |
|---|---|---|
| Plat: | 19 | Lot: | 777 |
| Zoning: | Res | Block: | |
| Assessment: | $ 181300.00 | |
| Real Estate | $ 4375.00 | |
| Tax Year: | 2012 | |
| Fire District Tax: | $ 0.00 | |
| Asn Fee: | Asn Fee Per: | |

Sold Price:
List Price:   $ 169,500
Original Price:   $ 178,900

Aprox Lot SF:   8,000 SqFt
Aprox Acres:
Frontage:

| | |
|---|---|
| Internet / Address Display: | Y/Y |
| IDX / Address Display: | Y/Y |
| Consumer / Address Display: | Y/Y |
| Allow AVM / Comments: | Y/Y |
| Send to ListHub: | Y |

**Open House:**

**Days On Market:** 113        Virtual Tour

| | | | | | |
|---|---|---|---|---|---|
| **Type:** Ranch | **Year Built:** 1954 | **Full / Half Baths:** 1 / 0 | **Foundation:** | |
| **Aprox Abv Grd Liv Area:** 1200.0 | **Bedrooms:** 3 | **Under Construction:** N | **REO/Lender Owned:** N | **Short Sale:** N |
| **Aprox Blw Grd Liv Area:** 200 | **Total Rms:** 6 | **Levels:** 1 | **Subsidized Housing:** N | |
| **Aprox Total Liv Area:** 1400 | **Living Area Source:** Tax Assessor | **Historic:** Unknown | |

**Charming Ranch in great family neighborhood, new cherry kitchen with granite, gleaming hardwoods, walkout to private patio, air, maintenance free exterior.**

| | |
|---|---|
| **Lower Level:** DEN/OFFICE, MECHANICALS | **Fin Floor:** Hardwood, Ceramic |
| **1st Floor:** LR,TBTS,2TBR,MBR,K-DA,DEN | **Wall:** Dry Wall |
| **2nd Floor:** | **Basement:** Full, Concrete, Partial Finished, Walkout |
| **3rd Floor:** | **Fireplace:** 0 / None |
| **Living Room:** **Master Bdrm:** | **Handicap Acc:** One Level |
| **Interior:** | |

**Rooms:**   Dining Area, Den, Laundry Area, Workshop, Living Room, Master Bedroom on 1st Floor

**Equipment:** Dishwasher, Washer, Dryer, Microwave

| | | | |
|---|---|---|---|
| **Garage:** Attached | | **Garage Spaces:** 1 | **On-Site Parking:** 2 |
| **Exterior:** Vinyl Siding, Insulated Glass Windows, Storm Door, Patio | | | |
| **Water Amenities:** | | **Underground Tank Size/Type:** None / None | |

**Near:**   Shopping, Bus, Commuter Bus, Highway Access, Private School, Public School, Hospital, Recreational Facility, Tennis, Golf

**Lot:**   Paved Driveway

| | | | |
|---|---|---|---|
| **Heat System:** Forced Air | | **Electric:** 100 Amps, Circuit Breaker | |
| **Heating Fuel:** Gas | **Water Supply:** Connected | **Plumbing:** Mixed | **Insulation:** Unknown |
| **Aprx Heat $:** Undetermined | **Hot Water:** Gas | **Cooling:** Central Air | **Sewer:** Connected |

| Listing Agent: 12615 | Listing Office: RMAX02 |
|---|---|
| Dwight LEIGH | RE/MAX PROFESSIONALS |
| dleigh215@yahoo.com | 401-884-6050        dleigh215@yahoo.com |
| 401-339-7975 | |

| | | | | |
|---|---|---|---|---|
| List Date: | **Entry Only:** N | **Limited Service:** N | **Occupancy:** 1-30 Days | **Lockbox / #:** Office |
| Exp Date: | **Photo:** R | **RE Lic Owner:** N | **List Contract:** Exclusive Right to Sell | **Sign on Property:** Y |

**Show Instr:** EMAIL LISTING AGENT

**Comp to Coop Broker:** 2.5% VNS

**Comp Comments:**

| | | | |
|---|---|---|---|
| Off Mkt date: | Closed Date: | List Price: $ 169,500 | Seller 2nd: |
| Contract date: | Financing: | Sold Price: | Seller Pays CC: | Seller Paid: |
| Terms: | | Type of sale: | |
| Pertinent Sale Data: | | | Days on Market: 113 |
| Coop Office: | | Coop Agent: | |

Broker Display        Information Deemed Reliable But Not Guaranteed. All compensation offered through MLS to the cooperating company        08/16/13
is paid based exclusively on its becoming procuring cause of the purchaser.

INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED
www.AssetVal.com - (800) 560-7350

| Project Name | RLM081413 | Completion Date | | 08/20/2013 | |
|---|---|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | | JUNA SENDOLO | |
| Street Address | 20 Bonaparte St | | | | |
| City | Providence | State | RI | Zip | 02904 |

**COMPARABLE LISTING 3**



INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED
www.AssetVal.com - (800) 560-7350

**ASSET VALUATION & MARKETING** INC.
*Valuation Solutions™*

| Project Name | RLM081413 | Completion Date | 08/20/2013 |
|---|---|---|---|
| Inspection Type | Exterior | Borrower Name | JUNA SENDOLO |
| Street Address | 20 Bonaparte St | | |
| City | Providence | State | RI | Zip | 02904 |

## Comparable Listing 3 - Page 1 of 1

### Single Family - MLS # 1047467 — Price Changed

**63 THELMA AV**

**North Providence, RI 02904**

NBRHD: WOODWARD

| | | |
|---|---|---|
| Sold Price: | | |
| List Price: | | $ 179,500 |
| Original Price: | | $ 184,900 |
| Aprox Lot SF: | | 5,607 SqFt |
| Aprox Acres: | | 0.129 Acres |
| Frontage: | | |

| | | |
|---|---|---|
| Plat: | 5 | Lot: | 210 |
| Zoning: | | Block: | |
| Assessment: | $ 165100.00 | | |
| Real Estate | $ 3400.00 | | |
| Tax Year: | 2012 | | |
| Fire District Tax: | $ 0.00 | | |
| Asn Fee: | | Asn Fee Per: | |
| Days On Market: | 15 | | |

Internet / Address Display: Y/Y
IDX / Address Display: Y/Y
Consumer / Address Display: Y/Y
Allow AVM / Comments: Y/Y
Send to ListHub: Y

**Open House:**

| | | | | |
|---|---|---|---|---|
| Type: | Ranch | Year Built: | 1976 | Full / Half Baths: | 1 / 1 | Foundation: | 40 x 26 |
| Aprox Abv Grd Liv Area: | 1040.0 | Bedrooms: | 3 | Under Construction: | N | REO/Lender Owned: | N | Short Sale: | N |
| Aprox Blw Grd Liv Area: | 600 | Total Rms: | 7 | Levels: | 1 | Subsidized Housing: | N | |
| Aprox Total Liv Area: | 1640 | Living Area Source: | Tax Assessor | Historic: | N | |

**Newly renovated from top to bottom. NEW deck and stamped concrete patio puts this house in A1 condition. NEW stainless steel appliances, vinyl siding and MORE. Be the first to view. Won't last.**

| | |
|---|---|
| Lower Level: FR LNDY BA WORK WALKOUT | Fin Floor: Hardwood, Ceramic, Wall to Wall Carpet |
| 1st Floor: EIK LR BA 3BD | Wall: Plaster, Dry Wall |
| 2nd Floor: | Basement: Full, Finished, Walkout, Concrete |
| 3rd Floor: | Fireplace: 0 / None |
| Living Room: Master Bdrm: | Handicap Acc: One Level |
| Interior: Cathedral Ceilings | |
| Rooms: Eat In Kitchen, Family Room, Laundry Room, Workshop, Utility Room, Living Room | |

**Equipment:** Refrigerator, Oven/Range, Dishwasher, Exhaust Fan, Microwave, Alarm Owned, Cable TV

| | | |
|---|---|---|
| Garage: None | Garage Spaces: 0 | On-Site Parking: 2 |
| Exterior: Vinyl Siding, Deck, Patio | | |
| Water Amenities: | | |
| | Underground Tank Size/Type: None / None | |
| Near: Shopping, Bus, Commuter Bus, Highway Access, Private School, Public School, Hospital, Recreational Facility, Swimming, Tennis | | |
| Lot: Fenced Yard, Out Building | | |
| Heat System: Forced Water, Baseboard | Electric: 100 Amps | |
| Heating Fuel: Gas | Water Supply: Connected | Plumbing: Mixed | Insulation: Unknown |
| Aprx Heat $: 901-1200 | Hot Water: Gas | Cooling: Wall Unit | Sewer: Connected |

| | |
|---|---|
| Listing Agent: 24708 | Listing Office: RARI |
| Lynn Forlini | Realty Associates RI |
| forlinihomes@gmail.com | 401-942-0110 |
| 401-413-8920 | ForliniHomes@gmail.com |
| | 24708 |

| | | | |
|---|---|---|---|
| List Date: | Entry Only: N | Limited Service: N | Occupancy: 1-30 Days | Lockbox / #: None |
| Exp Date: | Photo: R | RE Lic Owner: N | List Contract: Exclusive Right to Sell | Sign on Property: Y |

**Show Instr:** 24 hr please. EMAILS ONLY!!!! Listing agent MUST be present

**Comp to Coop Broker:** 2%
**Comp Comments:** 2%

| | | | |
|---|---|---|---|
| Off Mkt date: | Closed Date: | List Price: $ 179,500 | Seller 2nd: |
| Contract date: | Financing: | Sold Price: | Seller Pays CC: | Seller Paid: |
| Terms: | | Type of sale: | |
| Pertinent Sale Data: | | | Days on Market: 15 |
| Coop Office: | | Coop Agent: | |

Broker Display        Information Deemed Reliable But Not Guaranteed. All compensation offered through MLS to the cooperating company        08/16/13
is paid based exclusively on its becoming procuring cause of the purchaser.